IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN CORDERO ET AL.,<br><br>    Plaintiffs,<br><br>    v.<br><br>COINBASE, INC.,<br><br>    Defendant. | Case No. 3:25-cv-04024-CRB<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION** |

Defendant Coinbase, Inc. moves to compel arbitration in a class action alleging that it charged customers hidden fees during cryptocurrency transactions. Plaintiffs argue that Coinbase's arbitration agreement, which they assented to, contains an unconscionable class waiver and cannot be enforced. Their primary argument, which relies on the 2005 California Supreme Court decision <u>Discover Bank v. Superior Court</u>, is preempted by the Federal Arbitration Act. Their remaining arguments also fail. And because the arbitration agreement reflects the parties' clear and unambiguous intent to delegate other questions of arbitrability, any further inquiry into the arbitrability of Plaintiffs' suit must be done before an arbitrator. The Court therefore **GRANTS** Coinbase's motion to compel arbitration.

**I.    BACKGROUND**

Plaintiffs Ryan Cordero, Patrick B. Goodwin, Henry Hobson III, and Christopher Johnson became Coinbase users between 2017 and 2021. Nacoste Decl. (dkt. 14-1) ¶¶ 7–8. Each created an account and accepted Coinbase's then-operative user agreement. Id. In 2022, Coinbase updated its user agreement and emailed its users to notify them of the changes. Id. ¶ 7; Update Email (dkt. 14-3). The email hyperlinked the 2022 terms and advised Coinbase users that they would be asked to accept the terms upon logging into

their account. Nacoste Decl. ¶ 7; Update Email When users visited the Coinbase site, Coinbase routed them to a landing page that directed them to "review and accept [the] updated terms and conditions." Nacoste Decl. ¶ 7.

Coinbase presented the full text of the new user agreement in a scroll box. See Nacoste Decl. ¶ 7; Scroll Wrap Agreement (dkt. 14-4). A button below prompted users to accept the new terms. Nacoste Decl. ¶ 7. The landing page also hyperlinked an article explaining that users could "submit a request so Coinbase Support can help [them] close [their] account and move [their] funds off the platform" if they did "not want to accept these changes." Id. Each plaintiff accepted the terms in February 2022. Id. ¶¶ 7–8.

The 2022 User Agreement includes an arbitration agreement. See Arbitration Agreement (dkt. 14-7, App'x 5). The agreement provides:

> Subject to the terms of this Arbitration Agreement, you and Coinbase agree that any dispute, claim, disagreements arising out of or relating in any way to your access to or use of the Services or of the Coinbase Site, any Communications you receive, any products sold or distributed through the Coinbase Site, the Services, or the User Agreement and prior versions of the User Agreement, including claims and disputes that arose between us before the effective date of these Terms (each, a "Dispute") will be resolved by binding arbitration, rather than in court.

Id. § 1.1.

The arbitration agreement includes a class waiver, which states in all caps that

> YOU AND COINBASE AGREE THAT, EXCEPT AS SPECIFIED IN SUBSECTION 1.8, EACH OF US MAY BRING CLAIMS AGAINST THE OTHER ONLY ON AN INDIVIDUAL BASIS AND NOT ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS, AND THE PARTIES HEREBY WAIVE ALL RIGHTS TO HAVE ANY DISPUTE BE BROUGHT, HEARD, ADMINISTERED, RESOLVED, OR ARBITRATED ON A CLASS, COLLECTIVE, REPRESENTATIVE, OR MASS ACTION BASIS. ONLY INDIVIDUAL RELIEF IS AVAILABLE, AND DISPUTES OF MORE THAN ONE CUSTOMER OR USER CANNOT BE ARBITRATED OR CONSOLIDATED WITH THOSE OF ANY OTHER CUSTOMER OR USER.

Id. § 1.3. It also includes the following batching provision governing how multiple claims filed by the same law firm or law firms will be arbitrated:

> To increase the efficiency of administration and resolution of arbitrations, you and Coinbase agree that in the event that there are one hundred (100) or more individual Requests of a substantially similar nature filed against Coinbase by or with the assistance of the same law firm, group of law firms, or organizations, within a thirty (30) day period (or as soon as possible thereafter), the AAA shall (1) administer the arbitration demands in batches of 100 Requests per batch (plus, to the extent there are less than 100 Requests left over after the batching described above, a final batch consisting of the remaining Requests); (2) appoint one arbitrator for each batch; and (3) provide for the resolution of each batch as a single consolidated arbitration with one set of filing and administrative fees due per side per batch, one procedural calendar, one hearing (if any) in a place to be determined by the arbitrator, and one final award.

Id. § 1.8. The provision explains that parties can dispute a batching decision before an arbitrator. Id.

The arbitration agreement also grants the arbitrator the "exclusive authority to resolve any Dispute, including … disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement." Id. § 1.6. The agreement exempts any dispute over the validity of the class waiver, which must be adjudicated in court. Id. Further, the agreement provides that any party that "invoke[s] the authority of a court of competent jurisdiction to compel arbitration" and thereby "obtains an order compelling arbitration" can seek reasonable costs and attorney fees associated with the motion to compel arbitration. Id. § 1.7.

Plaintiffs sued Coinbase, alleging that it charged consumers hidden fees in cryptocurrency transactions on the website and thus violated California and New York consumer-protection laws. See generally Compl. (dkt. 1). Coinbase moved to compel arbitration based on the above arbitration agreement. Mot. (dkt. 14). Plaintiffs oppose on the grounds that the class waiver is unconscionable. Opp. (dkt. 27).

**II.     LEGAL STANDARD**

Contracts relating to a commercial transaction are subject to the Federal Arbitration Act. Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).

3

1  The FAA provides that an arbitration agreement "shall be valid, irrevocable, and
2  enforceable, save upon such grounds as exist at law or in equity." 9 U.S.C. § 2. The
3  grounds for invalidating an arbitration agreement include "generally applicable contract
4  defenses, such as fraud, duress, or unconscionability." AT&T Mobility LLC v.
5  Concepcion, 563 U.S. 333, 339 (2011) (citation omitted).

"[A]ny party bound to an arbitration agreement that falls within the scope of the FAA may bring a motion in federal district court to compel arbitration." Magana v. DoorDash, Inc., 343 F. Supp. 3d 891, 898 (N.D. Cal. 2018) (citing 9 U.S.C. §§ 3–4). Although courts usually determine gateway issues of arbitrability, parties "may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable evidence.'" Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. 63, 69 (2019) (citation omitted). At bottom, a court must compel arbitration if it finds that (1) a valid arbitration agreement exists and (2) the agreement applies to the dispute at issue. Chiron, 207 F.3d at 1130.

### III. DISCUSSION

Plaintiffs do not contest that they entered into an arbitration agreement with Coinbase. Because both parties agreed to litigate the validity of the class waiver in court, the Court begins by addressing Plaintiffs' argument that the arbitration agreement is unconscionable due to the class waiver. Concluding that it is not, the Court next addresses the delegation provision and refers all remaining disputes to an arbitrator.

#### A. Unconscionability

Courts can invalidate agreements to arbitrate based on "generally applicable contract defenses, such as fraud, duress, or unconscionability." Concepcion, 563 U.S. at 339 (citation omitted). But they cannot rely on "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." Id.

Plaintiffs raise three reasons why they argue that Coinbase's class waiver is unconscionable: (1) that it violates the Discover Bank rule, a California rule of contract interpretation as to class waivers, Opp. at 9–13; (2) that the high cost of arbitration would

4

1  otherwise bar them from effectively vindicating their claims, rendering the agreement
2  unconscionable, id. at 11–12; and (3) that it does not pass muster under traditional state-
3  law unconscionability analysis, id. at 14–17.

        **1.     Discover Bank**

5          In 2005 the California Supreme Court decided in Discover Bank v. Superior Court
6  that a class waiver is unconscionable when it "is found in a consumer contract of adhesion
7  in a setting in which disputes between the contracting parties predictably involve small
8  amounts of damages, and when it is alleged that the party with the superior bargaining
9  power has carried out a scheme to deliberately cheat large numbers of consumers out of
10  individually small sums of money." 36 Cal. 4th 148, 162–63 (2005). California courts
11  applied this rule, known as the Discover Bank rule, to invalidate as unconscionable
12  arbitration agreements with class waiver provisions. E.g., Gatton v. T-Mobile USA, Inc.,
13  152 Cal. App. 4th 571, 586–88 (2007) (finding that an arbitration agreement was
14  unconscionable because it contained a class waiver). But in 2011 the Supreme Court held
15  that, as applied to arbitration agreements, the Discover Bank rule "stands as an obstacle to
16  the accomplishment and execution of the full purposes and objectives of Congress" and is
17  therefore preempted by the FAA. Concepcion, 563 U.S. at 352 (citation omitted). The
18  Discover Bank rule interfered with the principle that "a court may not 'rely on the
19  uniqueness of an agreement to arbitrate as a basis for'" finding unconscionability. Id. at
20  341 (citation omitted). The Discover Bank rule also interfered with the FAA's purpose of
21  "ensur[ing] that private arbitration agreements are enforced according to their terms." Id.
22  at 344 (citation omitted).
23          The Ninth Circuit recently addressed the continued viability of the Discover Bank
24  rule in Heckman v. Live Nation Entertainment, Inc. 120 F.4th, 670 (9th Cir. 2024),
25  petition for cert. filed sub nom. Live Nation Ent., Inc. v. Heckman, No. 24-1145 (filed
26  May 7, 2025). A group of plaintiffs had brought a class action antitrust suit against Live
27  Nation and Ticketmaster. Heckman, 120 F.4th at 676–77. But those plaintiffs had signed
28  an arbitration agreement stating that their cases would be adjudicated by New Era, an

1    arbitrator, using its newly established "Expedited Mass Arbitration" rules. Id. at 677–78.
2    New Era's mass arbitration included the following components:

- Unilateral Discretion over the Arbitrator.  Though consumers would be entitled to participate in the selection of an arbitrator, New Era could replace the agreed-upon arbitrator at its sole discretion. Id. at 678.
- Bellwether Trials.  Three bellwether trials would be litigated individually and confidentially, and any outcome would become precedent on all common issues in all batched cases. Id. at 678–79.
- Truncated Discovery and Briefings.  Discovery was limited to 10 files totaling 250 pages, and closing briefs were limited to 15,000 characters. Id. at 679.
- One-Sided Injunctive Relief.  The parties could appeal only awards, not denials, of injunctive relief. Id. at 680.

The Ninth Circuit held that the FAA did not protect Ticketmaster and New Era's mass arbitration model. Id. at 689–90.  As the court explained, Congress contemplated bilateral arbitration—not class-wide arbitration—when they passed the FAA. Id.  Thus, the Ninth Circuit distinguished Concepcion, concluded that "the FAA does not preempt California's Discover Bank rule as it applies to mass arbitration," and from there held that the Discover Bank rule rendered Ticketmaster's class waiver unconscionable. Id. at 690.

Against this backdrop, Plaintiffs argue that Heckman, not Concepcion, governs here, and so the Discover Bank rule applies and renders Coinbase's class waiver unconscionable. Opp. at 9–11.  Plaintiffs contend that Coinbase's batching provisions deviate from the bilateral arbitration that Congress envisioned when it passed the FAA. Id.  In doing so, they argue for a narrow understanding of "bilateral arbitration," asserting that it depends on the number of parties involved in a proceeding and that bilateral arbitration covers only individualized arbitration. Id.

Coinbase, for its part, does not appear to contest the basic premise that Congress intended the FAA to protect bilateral arbitration. Reply (dkt. 28) at 2–3.  Rather, it argues for a broader understanding of "bilateral." Id.  Coinbase asserts that the inquiry focuses on

6

1   whether the proceeding has a representative nature—that is, whether the arbitration

2   procedures would bind absent plaintiffs to decisions in bellwether trials, like in a class

3   action or MDL.  Id. at 3.  They therefore contend that any non-representative arbitration,

4   whether individual or consolidated, is bilateral for purposes of the FAA.  Id. at 3, 5–6.

5         Coinbase has the better argument.  Heckman, when read alongside the Supreme

6   Court's arbitration jurisprudence, just holds that the FAA does not protect representative

7   arbitration, a form of arbitration that did not remotely exist when Congress passed the

8   FAA.  For instance, Heckman cites Concepcion for the principle that "[a]rbitration is

9   poorly suited to the higher stakes of class litigation."  120 F.4th at 690 (emphasis added)

10  (quoting Concepcion, 563 U.S. at 350).  And since Concepcion the Supreme Court has

11  expressly rejected the argument that "a proceeding is 'bilateral' in the relevant sense if—

12  but only if—it involves two and only two parties and the arbitration 'is conducted by and

13  on behalf of the individual named parties only.'"  Viking River Cruises, Inc. v. Moriana,

14  596 U.S. 639, 656 (2022) (citation omitted).  Plaintiffs' reading of Heckman, which would

15  exclude all non-individualized arbitration from the FAA's protection, would put Heckman

16  in tension with Concepcion and Viking River Cruises.  The Court will not create such

17  discord where a more harmonious reading is possible.  See Mitcheson v. El Antro LLC,

18  No. CV-19-1598-PHX-GMS, 2020 WL 7075239, at *16 (D. Ariz. Dec. 3, 2020) ("Indeed,

19  district courts have a duty to reconcile Ninth Circuit precedent … with Supreme Court

20  Authority."  (citing FTC v. Consumer Def., LLC, 926 F.3d 1208, 1213 (9th Cir. 2019))).[1]

21        Following Heckman, the Ninth Circuit has itself suggested that this is the correct

22  approach.  In Jones v. Starz Entertainment, LLC, the court evaluated whether an arbitration

23  agreement that barred parties from engaging in "class or representative" proceedings also

---

[1] Plaintiffs also contend that "Heckman teaches that the Discover Bank rule is preempted only where it poses an obstacle to Congress' goal of promoting 'arbitration as envisioned by the FAA in 1925.'"  Surreply (dkt. 35) at 2 (emphasis in original) (citing Heckman, 120 F.4th at 690).  While Heckman could possibly be read to suggest that the FAA preempts the Discover Bank rule only with respect to arbitration as Congress understood the term in 1925, this reading lacks any guiding principle and would therefore create unnecessary tension with Supreme Court precedent.

7

1  prohibited consolidated proceedings. 129 F.4th 1176, 1182 (9th Cir. 2025). The court
2  explained that it did not:

> Consolidation is not the same as class or representative arbitration. Some similarities exist in that both procedures encompass multiple disputes and heighten the commercial stakes. There is a critical difference, however. In a class or representative arbitration, an individual brings claims <u>on behalf of</u> others, whereas a claimant in a consolidated arbitration brings the claim in her <u>individual</u> capacity. It is that representative feature, not the mere numerosity of parties, that forms the critical element of the "fundamental changes brought about by the shift from bilateral arbitration to class-action arbitration." <u>Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.</u>, 559 U.S. 662, 686 (2010). The Supreme Court cautioned that "a proceeding in which two and only two parties arbitrate exclusively in their individual capacities is not the only thing one might mean by 'bilateral arbitration.'" <u>Viking River Cruises</u>, 596 U.S. at 657–58.

<u>Id.</u> (emphasis in original). In reaching this result, the court distinguished New Era's mass arbitration procedures at issue in <u>Heckman</u> (which "contained all the red flags associated with classwide arbitration") from the consolidated, batched arbitration before it. <u>Id.</u>

Like the arbitration agreement in <u>Jones</u>, Coinbase's arbitration agreement provides for consolidated, not class-wide, arbitration. There are no bellwether or representative proceedings that bind absent parties. Arbitration Agreement § 1.8. Each batched arbitration operates "as a single consolidated arbitration with one set of filing and administrative fees due per side per batch, one procedural calendar, one hearing … and one final award." <u>Id.</u> In fact, the provision clarifies that "in no way" shall it "be interpreted as authorizing a class, collective, and/or mass arbitration or action of any kind." <u>Id.</u> Further, the problematic attributes of New Era's mass arbitration model from <u>Heckman</u> are not present here. Coinbase's arbitration agreement and the AAA rules does not involve bellwether trials, impose strict file or page limits for discovery or briefs, or restrict appeals only to those brought by one side.

As a final point, a narrow reading of <u>Heckman</u> is consistent with the FAA's "liberal federal policy favoring arbitration agreements." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24 (1983). Adopting Plaintiffs reading would expand <u>Heckman</u>

8

1    and revive the Discover Bank rule in additional contexts, which would risk imposing a
2    special disadvantage on arbitration agreements. Id. The Court rejects Plaintiffs' invitation
3    to so contravene the FAA and the Supreme Court's guidance.

### 2. Effective Vindication

Plaintiffs next argue that "the Class Action Waiver effectively deprives Plaintiffs of any meaningful right to pursue their statutory claims in arbitration," and so the FAA does not require arbitration. Opp. at 11–12. This argument fares no better.

First, though Plaintiffs suggest that an "effective vindication" principle requires the Court to apply the Discover Bank rule even after Concepcion, they do not identify any precedent that would require this outcome. Quite the opposite—the Supreme Court has explained that litigating the issue of effective vindication would create a "hurdle [that] would undoubtedly destroy the prospect of speedy resolution that arbitration in general and bilateral arbitration in particular was meant to secure." Am. Express Co. v. Italian Colors Rest., 570 U.S. 228, 239 (2013).

Second, even if the lack of effective vindication could be sufficient grounds for lifting Concepcion's preemption ruling, Plaintiffs fail to show that they are barred from effectively vindicating their claims. As the party "seek[ing] to invalidate an arbitration on the ground that the arbitration would be prohibitively expensive," Plaintiffs bear the burden of showing "the likelihood of incurring such costs." Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 92 (2000). If a risk of incurring prohibitively expensive costs is too speculative, then it cannot justify invalidating the arbitration agreement. Id. at 91.

Plaintiffs have not sufficiently demonstrated that arbitration would be prohibitively expensive. Their argument that the $225 filing fee makes it economically unappealing to pursue their claims is unsupported by evidence that their claims are, in fact, worth less than $225. See Taylor Decl. (dkt. 27-1) ¶ 2 (transaction logs do not indicate how much Plaintiffs spent in spread fees). Indeed, for at least one of Plaintiffs' claims they request the greater of actual damages or $500—and that is not considering statutory penalties of up to $10,000. See Compl. ¶ 176. For these reasons, the effective vindication principle does

9

1  not require invalidation of the class waiver.

### 3. Traditional Unconscionability Analysis

Plaintiffs argue that even if the class waiver is not subject to the Discover Bank rule, the Court can still invalidate it using traditional unconscionability analysis. To demonstrate that a contractual provision is unconscionable, Plaintiffs need to show both procedural and substantive unconscionability. Poublon v. C.H. Robinson Co., 846 F.3d 1251, 1260 (9th Cir. 2017). These two factors work on a sliding scale: "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Id. (quoting Sanchez v. Valencia Holding Co., 61 Cal. 4th 899, 910 (2015)). The standard for unconscionability "is, as it must be, the same" for arbitration agreements as for any other contract. Id. (quoting Sanchez, 61 Cal. 4th at 912).

#### a. Procedural Unconscionability

The first inquiry in determining procedural unconscionability is whether an agreement is a contract of adhesion, in which a party with superior bargaining strength presents a subscribing party with terms on a take-it-or-leave-it basis. Id. at 1260–61. There is no dispute that Coinbase's 2022 User Agreement is a contract of adhesion. Yet an adhesive contract without more is only minimally procedurally unconscionable. Id. at 1261–62. In looking beyond the mere adhesive nature of a contract to determine whether there is meaningful procedural unconscionability, California courts consider whether the parties were relatively similar in bargaining power and sophistication, whether the complaining party had access to reasonable market alternatives, and whether the provision is buried in a lengthy agreement. Aggarwal v. Coinbase, Inc., 685 F. Supp. 3d 867, 880–81 (N.D. Cal. 2023).

Courts in this district have repeatedly rejected arguments that Coinbase's 2022 User Agreement is procedurally unconscionable on its face. E.g., Aggarwal, 685 F. Supp. 3d at 880–81; Kamath v. Coinbase, Inc., Case No. 23-cv-3533-CRB, 2024 WL 950163, at *8 (N.D. Cal. Mar. 5, 2024); Pearl v. Coinbase Glob., Inc., No. 22-cv-3561-MMC, 2023 WL

1769190, at *6–7 (N.D. Cal. Feb. 3, 2023).[2] The arbitration agreement is clearly presented in bolded, all-caps font, and the provisions are clearly labeled. Aggarwal, 685 F. Supp. 3d at 881. This includes the class waiver, which is clearly presented and labeled and is in all-caps. Arbitration Agreement § 1.3.

Nonetheless, Plaintiffs insist that the class waiver is procedurally unconscionable because it (1) gives Coinbase the unilateral right to make material changes to the Arbitration Clause, (2) has conflicting terms about whether changes apply retroactively, and (3) considers continued use of the Coinbase Site as an acceptance of the new terms. Plaintiffs argue that the last point is especially problematic because users already have currency held on the Coinbase site. Opp. at 15.

Plaintiffs' first two arguments suffer from the same problem—Plaintiffs do not allege that the unilateral modification or retroactivity clauses were actually enforced or used to specifically alter the class waiver, let alone in a procedurally unconscionable way.[3] See Loewen v. Lyft, Inc., 129 F. Supp. 3d 945, 956 (N.D. Cal. 2015) (rejecting argument that a unilateral modification provision was procedurally unconscionable because plaintiffs did "not argue that Lyft modified the [Terms of Service] so frequently or significantly as to make it oppressive"); cf. McQueen v. Chevron Corp., No. C 16-2089 JSW, 2017 WL 6451803, at *3 (N.D. Cal. Dec. 18, 2017) (finding that because "no party [] sought to enforce the mediation provision," it was "irrelevant" to the unconscionability analysis).

---

[2] Plaintiffs point out that after the court referred arbitrability questions to an arbitrator, "the arbitrator in Mr. Pearl's case concluded that the January 2022 Arbitration Agreement is unconscionable and unenforceable." Surreply at 5. That is irrelevant and incomplete. It is irrelevant because the arbitrator found the agreement unconscionable after analyzing the agreement as a whole, while the Court can consider only the class waiver at this juncture. See Arbitration Agreement § 1.6  It is incomplete because a different arbitrator in the Pearl litigation actually rejected a similar unconscionability argument. Stip. Ex. 2 at 14, Pearl, No. 22-cv-3561-MMC (N.D. Cal. Feb. 16, 2024), ECF 47.

[3] Parties usually point to unilateral modification provisions as a source of substantive unconscionability, not procedural unconscionability. That is because unilateral modification provisions are not facially unconscionable as a procedural matter in light of the implied covenant of good faith and fair dealing, which prevents a party with unilateral modification rights from unilaterally modifying a contract in an unconscionable manner. See Poublon, 846 F.3d at 1269 ("California courts have held that the implied covenant of good faith and fair dealing prevents a party from exercising its rights under a unilateral modification clause in a way that would make it unconscionable." (citation omitted)).

1    Plaintiff's third argument does not give rise to procedural unconscionability because
2    Coinbase users were not beholden to the website nor forced to accept its terms. Users
3    were given the option to close their account and transfer their cryptocurrency elsewhere if
4    they objected to the 2022 User Agreement. See Nacoste Decl. ¶ 7. And as other courts
5    have already explained, "nothing in the record suggests that Coinbase was Plaintiffs' only
6    option for cryptocurrency services." Aggarwal, 685 F. Supp. 3d at 881 (citation omitted).
7    Contrast this with Heckman, where Ticketmaster retained the right to make unilateral and
8    retroactive changes without notice, such that consumers who had already purchased tickets
9    would be subject to new terms—terms that would apply to those tickets—by sole virtue of
10   revisiting the website. 120 F.4th at 682–83. Thus, Plaintiffs were not improperly
11   pressured or coerced into agreeing to the new terms, and there is no additional procedural
12   unconscionability on this basis.

### b.     Substantive Unconscionability

Substantive unconscionability addresses whether the terms of the agreement are so "overly harsh" or "one-sided" that they "shock the conscience." Poublon, 846 F.3d at 1261 (citing Sanchez, 61 Cal. 4th at 912). A court will not find "a simple old-fashioned bad bargain" unconscionable; the terms must be "unreasonably favorable to the more powerful party." Id. Plaintiffs make four arguments why the class waiver is substantively unconscionable. None is persuasive.

First, Plaintiffs argue that the class waiver is unconscionable because "the cost of initiating an arbitration is greater than the value of each Plaintiff's claim." Opp. at 15. Courts occasionally will find substantive unconscionability where the parties' agreement unreasonably increases the cost of pursuing arbitration, see Parada v. Superior Court, 176 Cal. App. 4th 1556, 1573–84 (2009), but the hallmarks of such a finding are not present here. Plaintiffs do not identify any specific provisions of the arbitration agreement that are unnecessary and unreasonable. Compare id. at 1580–81 (unreasonable to require a three-arbitrator panel that would cost each consumer over $20,000 for a four-day arbitration). Nor do Plaintiffs make a concrete showing of their inability to pay. Id. at 1582–84.

12

1   Plaintiffs' mere invocation of cost is not grounds to find substantive unconscionability.

2   Second, Plaintiffs argue that the class waiver is unconscionable because it "unlawfully strips consumers of their statutory right to seek public injunctive relief under California's consumer protection statute."  Opp. at 16.  But this argument applies only if plaintiffs request public injunctive relief (as opposed to private injunctive relief).  Clifford v. Quest Software Inc., 38 Cal. App. 5th 745, 751 (2019); cf. Kramer v. Coinbase, Inc., 105 Cal. App. 5th 741, 747–53 (2024) (affirming denial of motion to compel arbitration in case where plaintiffs sought public injunctive relief).  Plaintiffs disavow any intent to request public injunctive relief, Opp. at 16 n.13, so this argument does not create substantive unconscionability.

Third, Plaintiffs argue that the arbitration agreement grants attorney fees to any party who successfully compels arbitration in a judicial setting.  Id. at 16; Arbitration Agreement § 1.7.  Yet the fee-shifting provision is not part of the class waiver, meaning that its viability must be decided by an arbitrator, not the Court.  Arbitration Agreement § 1.6.[4]  And Plaintiffs' argument is unpersuasive in any case.  They rely exclusively on case law from the employment context, in which California law prohibits employers from requiring employees to bear any arbitration-related expenses that they would not have incurred in court.  Storms v. Paychex, Inc., No. LA CV21-1534 JAK, 2022 WL 2160414, at *14–15 (C.D. Cal. Jan. 14, 2022).  Either way, the Court cannot find that the attorney fees provision gives rise to substantive unconscionability.

Fourth, Plaintiffs argue that "the Arbitration Clause unlawfully prohibits Plaintiffs from challenging the validity of the Limitation of Liability provision."  Opp. at 16.  Again, this argument does not relate to the class waiver, but rather to the arbitration agreement as a whole, so the Court cannot consider it.  See Arbitration Agreement § 1.6.

---

[4] Plaintiffs argue that the Court should evaluate the entire agreement when considering whether specific provisions are unconscionable.  Surreply at 4.  This is required only for challenges to delegation provisions, since courts must consider how other provisions impact the delegation provision.  Heckman, 120 F.4th at 681.  Plaintiffs fail to explain how any other provision of the arbitration agreement could impact the class waiver.

Plaintiffs have therefore not made a showing that the class waiver is procedurally or substantively unconscionable under California law.

### B.     Delegation Provision

The arbitration agreement requires the Court to refer all remaining disputes to an arbitrator.  Id.; see also Momot v. Mastro, 652 F.3d 982, 986 (9th Cir. 2011) ("Although gateway issues of arbitrability presumptively are reserved for the court, the parties may agree to delegate them to the arbitrator.").  This provision of the agreement constitutes "clear and unmistakable evidence" that the parties intended an arbitrator to decide these issues, and the Court must respect the parties' decision.  See Donovan v. Coinbase Glob., Inc., 649 F. Supp. 3d 946, 951 (N.D. Cal. 2023); Aggarwal, 685 F. Supp. 3d at 878.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion to compel arbitration and **STAYS** this action.

**IT IS SO ORDERED.**

Dated: August 5, 2025

CHARLES R. BREYER
United States District Judge

14